JOHN D. ELWELL, RESPONDENT, *v.* CYPRIEN FABRE
AND OTHERS, APPELLANTS.

*Construction of an agreement to furnish a pier for a steamship while in port.*

In an action, brought to recover wharfage, it appeared that on December 28, 1886, the defendants, who owned a line of steamships running from Europe to the port of New York, entered into a contract with the plaintiff, by which the plaintiff agreed to furnish a certain pier for the use of the steamers of the line during the time they were in port, the defendants agreeing to send the steamers of the line arriving at New York to this pier, and to pay plaintiff for the use thereof as follows: " Commencing with and including the day of each steamer's arrival in the port of New York, providing such arrival be previous to the hour of four P. M. (if such arrival be after that hour, then the following day to count as the first day), and including the day of each steamer's departure for sea," etc., fifty dollars per day.

The defendants also agreed to give notice to the plaintiff of the date of the sailing of each steamer, at least ten days before the arrival of each steamer at New York, in order that the pier might be reserved for it. Some of these steamers having arrived at quarantine were detained in consequence of having cholera on board.

The main question involved in this action was as to the right of the plaintiff to recover wharfage from the time of their arrival at quarantine.

*Held,* that the expectation of the parties was that, barring accidents, upon the day of the arrival of the defendants' steamers, or at least upon the next day, they would need pier accommodations and be brought to the plaintiff's pier.

That, in case of the arrival of these steamers before four o'clock in the day, the plaintiff was bound to have his pier ready, and that in case of delays in arrival from tempestuous weather, or otherwise, the plaintiff had no remedy for the loss of his wharfage.

That, as an offset to this, it was the intention of the parties that from the arrival of the ship in the port of New York the plaintiff was to be at no further risk in reference to his right to collect wharfage, no matter at what time the defendants might chose to dock their ships.

The defendants claimed that this contract was a marine contract and that the operation thereof was suspended by force of law.

*Held,* that this claim could not be sustained.

That the detention at the quarantine did not arise simply from the action of the State, but because of the condition in which the vessels were upon their arrival.

That as the laws in reference to the quarantine were in force at the time the contract was made, and were the laws of the State where the contract was made, and where the contract was to be performed, the contract was subject thereto.

By the aforesaid agreement between the parties it was further provided that if at any time, for any cause, the plaintiff should be unable to furnish the pier to any steamer of the defendants, that then the plaintiff was to furnish such steamer, without loss of time, a covered pier as convenient as possible to the plaintiff's pier, and at no additional expense to the defendants for such change.

While the pier leased by the plaintiff was occupied by one of the steamers of the defendants, in October, another steamer having arrived, the plaintiff, on October 19, 1887, hired and furnished another pier for the accommodation of this latter steamer, and retained and held the same subject to her use until and including the 25th day of October, 1887, when, in consequence of the steamer being detained at quarantine and the time of her release being uncertain, he gave up this pier to the owner thereof, and the same condition of affairs existed later in regard to another of the steamers.

The referee held that the plaintiff was entitled to recover fifty dollars a day during the whole time that these steamers were in port, whether he had provided this additional wharfage or not, and that it was immaterial to the defendants whether he had the pier or not, inasmuch as they made no application for the occupation of the pier which was refused.

*Held,* that he erred in so holding.

That the plaintiff could not recover this additional wharfage for an additional pier for the period that such pier was not provided and held in readiness by him.

APPEAL by the defendant from a judgment, entered in the office of the clerk of the city and county of New York on June 14, 1888, upon the report of a referee.

*R. D. Benedict,* for the appellants.

*Eustace Conway,* for the respondent.

VAN BRUNT, P. J.:

This action was brought to recover wharfage. On the 28th of December, 1886, the plaintiff and the defendants, who owned and operated a line of steamships running from Europe to the port of New York, entered into a contract whereby the plaintiff agreed to rent a certain pier for the use of the steamers of the line during the time they were in port; the defendants agreeing to send the steamers of the line arriving at New York to this pier, and to pay the plaintiff for the use thereof as follows: " Commencing with and including the day of each steamer's arrival in the port of New York, providing such arrival be previous to the hour of four P. M. (if such arrival be after that hour, then the following day to count as the first day), and including the day of each steamer's departure for sea, etc., fifty dollars per day." And by said agreement it was further provided that if at any time for any cause the plaintiff should be unable to furnish the pier to any steamer of the defendants, that then the plaintiff was to furnish such steamer, without loss of time,

a covered pier as convenient as possible to the plaintiff's pier, and at no additional expense to the defendants for such change. The defendants agreed to give notice to the plaintiff of the date of the sailing of each steamer from its last port at least ten days before the arrival of each steamer at New York, in order that the pier might be reserved for them.

Some of the steamers of the defendant having arrived at quarantine were detained in consequence of having cholera on board, and the main question involved in this case is as to the right of the plaintiff to recover wharfage from the time of their arrival at quarantine. Upon this point we think that the learned referee has reached a correct conclusion. As stated in his opinion; it is provided in the contract that " the defendant should give to the plaintiff at least ten days' notice of the time of sailing of the steamers, respectively, from their last port of departure for New York," the obvious object of which is that the plaintiff might make proper arrangements, within a reasonable time, to have his pier unoccupied and ready for the steamers upon their arrival. The expectation of the parties apparently was that, barring accidents, upon the day of their arrival, or at least the next day, they would need pier accommodations and be brought to the plaintiff's pier. This is shown by the clause in the contract, that the period for which payment should be made was to commence with and include the day of each steamer's arrival in the port of New York, provided such arrival be previous to the hour of four o'clock P. M.; but that if such arrival be after that hour, and the steamer does not come to the dock, then the following day to count as the first day. It was optional as to when the defendants should dock their ships; but, from the time of the arrival of the ships in the port of New York the plaintiff was bound to have his wharf ready to receive them. It would, therefore, seem to be reasonable to suppose that the parties had in view the fact that these ships would have to pass the quarantine, and that their arrival at the quarantine did not necessarily control the time at which they would be ready to enter the dock. It is to be assumed that, in case of the arrival of these steamers before four o'clock in the day, the plaintiff was bound to have his pier ready; and that in case of delays in arrival, arising from tempestuous weather or otherwise, the plaintiff had no recourse for the

loss of his wharfage. And, as an offset to this, it would appear that it was the intention of the parties that, from the arrival of the ship in the port of New York, the plaintiff was to be at no further risk in reference to his right to collect wharfage, no matter at what time the defendants might choose to dock their ships.

Under the construction claimed by the defendants, the plaintiff was bound to have his wharf in readiness to receive the vessels when they should arrive; and if the defendants, after entrance into the port of New York or arrival at the quarantine, should arbitrarily detain their ships, the plaintiff would be required to have his wharf all the time in readiness for the receipt of the ships, without any claim for wharfage whatever. The delays of the sea the plaintiff had to run the risk of, but he did not run any risk whatever after the vessel made the port, and it was not the intention of the parties that he should. It would seem, therefore, that the plaintiff was entitled to recover for wharfage from the time of the arrival of the vessels at the quarantine, if they arrived before four o'clock in the afternoon, which is the construction put upon the contract by the learned referee. ·

As to the defense that this was a marine contract and that the operation thereof was suspended by force of law, we do not think the objection is well taken. The detention of the vessel in getting to the dock must be considered as having been within the contemplation of the parties at the time of the making of the contract. The detention at the quarantine did not arise simply from the action of the State, but because of the condition in which the vessels found themselves upon their arrival. The laws in reference to the · quarantine were in force at the time the contract was made; they were the laws of the place where the contract was made and where the contract was to be performed, and all vessels from foreign ports were subjected to the dangers of this delay in case the necessity therefor arose. It is not that unexpected intervention by the sovereign power which suspends the operation of a maritime contract. The learned referee has found that when one of the steamers was in port it fully occupied the pier leased so that there was no room thereat for the accommodation of another of these steamers. To meet exigencies of this description, in case of there

being two steamers in port at the same time, it was provided that if at any time for any cause the plaintiff was unable to furnish the pier to any of the steamers of defendant, that then he was to furnish such steamer without loss of time a covered pier as convenient as possible to the pier leased, and at no additional expense to the defendant for such change. The pier leased having been occupied by one steamer in October, another steamer arrived and on the nineteenth of October the plaintiff hired and furnished another pier for the accommodation of this steamer and retained and held the same subject to her use until and including the 25th of October, 1887, when, in consequence of the steamer being detained at quarantine and the time of her release being uncertain, he gave up said other pier to the owner thereof, and this condition of affairs existed also later in regard to another of the steamers. The learned referee has found that the plaintiff was entitled to recover fifty dollars a day during the whole time that these steamers were in port, whether he had provided additional wharfage or not, and that it was immaterial to the defendants whether he had the pier or not, inasmuch as they had made no application for the occupation of a pier which had been refused.

In this we think the learned referee erred. We do not think that the plaintiff had the right to recover this additional wharfage for an additional pier for the period that such pier was not provided and held in readiness by the plaintiff. There is nothing in the contract which seems to imply such a condition of affairs, and certainly the plaintiff cannot recover for the furnishing of wharfage or being ready to furnish wharfage when the proof shows that he had neither so furnished it nor was ready to so furnish it. The only theory upon which a recovery could be had is that the plaintiff had the wharf ready for the occupation of the steamer. If he had not, then it would seem that the very basis of the claim had fallen. We, therefore, think that the learned referee erred in allowing a recovery for the wharfage of the substituted piers for those periods of time during which the substituted pier was not provided.

It would seem, further, that the referee has erred in regard to the amount of credits which he allowed upon the payment of wharfage. He finds that the defendants had paid on account of the steamer Britannia $400 and no more. The vouchers offered in evidence

show that the defendants paid $600, and that they were entitled to a credit of $200 on that account.

It would appear, therefore, that the judgment should be reduced to the sum of $900 and interest; and if the plaintiff stipulates to accept such reduction such judgment, as modified, should be affirmed, without costs to either party. In case such stipulation is not given, the judgment should be reversed and a new trial ordered, with costs to appellant to abide event.

BRADY and DANIELS, JJ., concurred.

Judgment as modified affirmed, without costs, on plaintiff stipulating to accept such modification.